## Cerceo *v.* Darby.
## Salerno *v.* Darby.

Argued May 6, 1971, before Judges KRAMER, WILKINSON, JR., and MENCER, sitting as a panel of three.

*Simon S. Berman,* with him *Richard, Brian, DiSanti & Hamilton,* for appellants.

*Peter J. Nolan,* for appellee.

OPINION BY JUDGE KRAMER, September 7, 1971:

This case involves an appeal from the Court of Common Pleas of Delaware County, which court sitting without a jury affirmed (in an Order dated February 1, 1971) the "decision" of the Council of the Borough of Darby (appellee) dismissing the appellants (Officers Cerceo and Salerno) from their positions on the Borough Police Force for conduct unbecoming police officers.

Some time between 6:20 P.M. on Saturday, January 3, 1970, and 12:15 A.M. on January 4, 1970, a Firestone Tire & Rubber Company store located in the Borough of Darby was the subject of a burglary by persons unknown. Officer Cerceo discovered the burglary in the line of his official police duties. He immediately called Darby Police Headquarters to report the incident. He was joined at the scene within a matter of minutes by Officer Salerno (Cerceo's superior on the watch), who aided him in a search of the premises. Police officers from two other municipalities were called to the scene, by radio, by Officer Salerno, for possible assistance. Officer Salerno returned to the Police Station, leaving Cerceo at the scene. The store manager was notified of the burglary, and upon his arrival, and an inspection of the store premises, informed Officer Cerceo that a number of items had been stolen, including several radios. Officer Cerceo, on instructions received from Salerno, returned to the store at

about dawn of that same day to search the vicinity for any of the stolen goods. Cerceo located a stolen Philadelphia automobile in an adjoining lot (possibly used in the burglary) and two of the stolen radios in a paper bag along an adjoining creek. At this point, a clear chronology of the facts breaks down. The record before Judge DIGGINS indicates conflicting testimony by a number of witnesses. It goes without question that Judge DIGGINS, sitting as the finder of fact, was within his prerogative to sift through and weigh the conflicting testimony and arrive at the findings of fact.

From the record, it is fair to conclude that Cerceo took the two radios still contained in the bag into the Police Station. Salerno and another Officer (Waples), who had the desk duty, were advised of the discovery of the two radios. The Chief of Police of the Borough of Darby was informed of the burglary and to some extent of the recovery of some stolen goods. Salerno, in the presence of Waples, instructed Cerceo to take the two radios home for safe-keeping. The record is clear that there are no suitable storage facilities at the Police Station for the safe-keeping of evidence, which in other cases had disappeared. The record is very confusing on what caused the Mayor of the Borough of Darby to institute an investigation into the missing radios, but in any event, on the next day, January 5, 1970, Police Sergeant Epright and Officer Patterson of the Darby Police Department, arrived at Officer Cerceo's home, apparently in an attempt to gather information on the stolen radios. While approaching the Cerceo residence, they met Officers Salerno, Cerceo and Waples in or about Salerno's automobile. When these two investigating officers questioned Cerceo concerning the stolen radios, Cerceo turned over to them the two radios which were still contained in the paper bag, but by this time were situated on the ground near Salerno's automobile.

Cerceo's explanation is that at Salerno's request, Cerceo had retrieved the radios from his residence with the intent to return them to the Police Station.

Cerceo later went to the home of the Mayor of the Borough of Darby (who took office on January 5, 1970). The record is very confusing on whether Cerceo admitted taking the radios for his own use or admitted an embarrassment over sloppy police procedure. The Mayor made conflicting statements at different times in the investigation. A county police investigation revealed no criminal culpability.

For the purposes of this appeal and the legal questions to be discussed it is not necessary for us to enter into a discussion and evaluation of the evidence. We accept the findings of the court below. Suffice it to say that sufficient doubts were created, touching upon the propriety of the conduct of the appellant officers. We have read the record in this case very carefully and must conclude that it does not prove that the appellants took, for their own use, the radios in question. It does prove that the police procedures in the Borough of Darby are deficient.

We now turn to the determinative issues of this appeal. On January 4, 1970, the same date of the burglary, appellants were informed of their suspensions by a police clerk. The Mayor thereafter notified appellants by letter of the indefinite suspensions on January 13, 1970. Eight days later, counsel for appellants requested a written statement of charges from the Chief of Police, who failed to comply with this request. Counsel also requested a statement of charges from the Mayor, and none was forthcoming. Borough Council met on February 2, 1970, and voted to suspend appellants indefinitely pending receipt of a report from the Criminal Investigation Division of the County Police of Delaware County. It is to be noted that the statutes

of our Commonwealth require that appellants be given a written statement of charges against them within five days after the same were filed (53 P.S. 46190, *infra*) as will be discussed later in this opinion. The Borough failed to file written charges within such time and consequently appellants were not afforded the opportunity of answering written charges. Nevertheless, appellants filed an appeal with the Civil Service Commission of Darby Borough on February 4, 1970, and again counsel requested a written statement of charges in support of the Borough Council's indefinite suspension of his clients. None was ever given.

The Civil Service Commission met twice (February 14 and 23, 1970) and on the latter date voted to affirm the action of the Darby Borough Council in the indefinite suspension of appellants on the grounds of conduct unbecoming an officer. Appellants availed themselves of their right of judicial appeal, and on March 4, 1970, filed same with the Court of Common Pleas of Delaware County. It should be noted that this appeal was based upon their indefinite suspensions as voted by Council and upheld by the Civil Service Commission.

Prior to any hearings held by the Court of Common Pleas on the aforementioned appeal, Borough Council met again to receive the report of the Criminal Investigation Division of the County Police. This report disclosed the existence of insufficient evidence upon which to base criminal prosecution of the appellants. The record in this case does not indicate that Borough Council had any other additional information; but, in spite of the report, voted to *dismiss* appellants from the Police Force, which in effect increased the severity of their prior action of indefinite suspension to a complete dismissal. Appellants chose not to appeal this vote of Council to the Civil Service Commission, but instead appeared before Judge DIGGINS of the Court of Com-

mon Pleas for the first hearing on the subject of their March 4, 1970, appeal, i.e., their indefinite suspensions. At the hearing, appellants waived all irregularities which had occurred before the Civil Service Commission; but specifically did not waive their right to have written statements of charges against them. Almost two months had passed since their initial suspensions, and appellants still had not received copies of written charges.

The case was argued before Judge DIGGINS in June 1970; and in the following September, appellants filed their brief with the Court. For the first time, appellants indicated that their appeal was to include the dismissal vote by Borough Council of April 6, 1970. On February 1, 1971, Judge DIGGINS issued an opinion and final order affirming the action of Borough Council in dismissing appellants as members of the Darby Borough Police Department for conduct unbecoming police officers. Appeal to the Commonwealth Court followed.

We look to the third of appellants' four arguments on appeal as the initial point at which to begin our evaluation and discussion. We do this for the reason that if the appellants are correct in that argument, then consideration of the remaining three questions is not necessary. Officers Cerceo and Salerno argue that they were at no time provided with written copies of the charges against them. This means that from the time of the oral suspension notification on January 4, 1970, up to and including the issuance by Judge DIGGINS of the final order affirming their dismissals, they were never afforded their right to written charges. Appellants assert that this lack of written notice goes to the very core of the protections built into the administrative process and renders any subsequent proceedings void for failure to comport with the legislative mandate. On this point, the case of *Gardner v. Repasky*,

434 Pa. 126, 252 A. 2d 704 (1969) is controlling. The court in *Gardner* was confronted with a borough policeman who had been given a two-week suspension by the Borough Council. More than a year lapsed following the suspension, before the Council furnished the charges to the Commission and a copy was given to the suspended police officer. The Civil Service Commission affirmed the suspension, as did the Court of Common Pleas. The Supreme Court addressed itself to the due process questions involved and held that the action of the Borough Council and the Commission had failed in significant aspects to comport with the Borough Code, and that therefore a reversal was in order. The Court, at page 129, based its reversal order upon the right of an employee to be informed quickly and clearly of the charges against him ". . . so that he may take whatever legal action he wishes. . . ." In this regard, our attention is directed to the Borough Code, Act of February 1, 1965, P. L.     , Act No. 581, 53 P.S. 46190, wherein it is stated: "A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed." This section is to be read together with the following section, 53 P.S. 46191, which grants to the employee the right to appeal to the Commission after reviewing the written charges. That section reads in part: "Such person may make written answers to any charges filed against him not later than the day fixed for a hearing." It goes on: "The commission shall grant him a hearing which shall be held within a period of ten days from the filing of charges in writing. . . ." The holding in the *Gardner* case, *supra,* interprets this section (53 P.S. 46190) of the Borough Court, *supra,* as granting the suspended, demoted or dismissed employee the right to have written charges *prior* to the filing of an appeal to the Civil Service Commission. The Court stated

(434 Pa. at page 128) : "The proper procedure is to file the charges at the time Council suspends the employee and notify the employee of same within five days. There are at least three reasons for requiring this procedure: (a) that the employee may be informed of what misbehavior he is accused and rectify it if he so chooses, (b) that the employee can determine whether the charges are statutorily sufficient, and (c) that he can decide whether to take an appeal to the Civil Service Commission and, if he does, to file a timely answer."

We have read, and reread, this record to determine if it was possible for the appellants to know the basis for their dismissal. Although it is possible to infer the basis on one of two grounds (1. the taking of radios for their own use, or 2. improper handling of criminal evidence), we cannot determine the exact basis with any certainty. The statutes quoted above require more than an inference.

We are at a loss to understand the presumptuous conduct of both the Borough Council and the Civil Service Commission in determining that some dispensation existed so as to render both bodies free and unshackled by the legislative mandate for due process. The statute very clearly recognizes the rights of appointing authorities to sever, terminate and regulate employment relationships while at the same time affording the affected employee certain protections so as to lessen and, hopefully, obviate discriminatory and arbitrary actions on the part of these appointing authorities. This means that due process is to be viewed as being inherent within the administrative process. It has been determined by the Legislature and so expressed by our courts that proper and timely notice are aspects of the due process safeguards of one who must appear before such an administrative agency. To withhold these rights, or a portion thereof, is to invalidate the resultant adjudica-

tion as a violation of legislative intent and the authority granted.

Were the facts of this case to end here, there would be no question as to our decision. Such, however, is not the case. Here we are confronted with an additional issue; and that is one of waiver. It is the contention of the Borough (appellee) that "appellants' counsel waived any irregularities concerning the indefinite suspension by so stating at the first hearing in the Court of Common Pleas". Looking to the notes of testimony before the Common Pleas Court, we find specific reservation by counsel for appellants of any waiver going to the failure of the Borough and the Commission to furnish the appellants a written statement of charges. The record does not support the lower court's assertion that a waiver of *all* irregularities had occurred. The fact that appellants, having voiced objections both before the Commission and before the Court of Common Pleas, nevertheless went ahead before the Agency and the court to argue the case on its merits, is no indication of an implied waiver. In arriving at this conclusion, we are aided again by our Supreme Court in the *Gardner* case, *supra*. The notes of testimony in that case of the proceedings before the Court of Common Pleas of Bradford County contained objections made by Counsel for the suspended police officer going to the failure to give proper and timely notice. The Common Pleas Court having overruled the objections went on to hear the case on its merits. Implicit in the opinion of the Supreme Court in *Gardner, supra,* is that the consent and participation by the officer employee to then go on to the merits of the case is in no way an implied waiver of the due process objection.

It therefore becomes apparent, in light of the foregoing discussion, that the court below erred in affirm-

ing the order of the Civil Service Commission, and the "decision" of Borough Council.

Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is above and beyond reproach. The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold. He who fails to so comport brings upon the law grave shadows of public distrust. We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forebearance from overt and indictable illegal conduct. It demands that in both an officer's private and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is a repository. The record in this case indicates that the appellants acted in a questionable manner which could bring dishonor upon their profession, and which did indeed contribute to a weakening of the public confidence and trust. We, too, as one of the courts of the Commonwealth, are a repository of this public trust, and we must zealously carry out our duty. We cannot allow the law to be ignored and the rights of individuals to be abrogated at the hands of a seemingly justified municipal government and an administrative agency. Government and its agencies owe the same fidelity as do officers to hew to the letter of the law. Government and its agencies can only engender public trust and confidence when their acts and orders are lawful and in a spirit of justice.

We hold that the Borough of Darby, its officials and agencies, did not provide the necessary written state-

184

ment of charges mandated by the Legislature, and therefore the dismissal rendered by a vote of the Borough of Darby Council was improper. We must therefore reverse the order of the court below which affirmed that dismissal.