Lee W. Faust, Appellant, *v.* Police Civil Service Commission of Borough of State College, State College, Pennsylvania 16801, Appellee.

Argued September 11, 1975, before President Judge Bowman and Judges Kramer and Mencer, sitting as a panel of three.

*Richard Kirschner,* with him *Neal Goldstein,* and *Markowitz & Kirschner,* for appellant.

*Robert K. Kistler,* with him *Miller, Kistler, Campbell, Mitinger & Beik,* for appellee.

Opinion by Judge Kramer, November 26, 1975:

This is an appeal filed by Lee W. Faust from an order of the Court of Common Pleas of Centre County sustaining his dismissal by the Police Civil Service Commission of Borough of State College. We affirm that order.

Faust was a nine-year veteran police officer of the Borough. At all times pertinent to this case, Faust was a married man living with his wife and two children. In February, 1973 "in connection with his police work," Faust met Sharon Bishop who, during all pertinent times, was a married woman residing with her husband and child. During the next year Faust and Bishop met occasionally, and on April 26 or April 27, 1974, Faust took Bishop to a tavern in a nearby town, after which they returned to State College and engaged in sexual relations in a motel room. On June 28 or 29, 1974 they met at the

same motel and used a room for the same purposes. On both occasions Faust had somehow obtained a key for the motel room, although the records of the motel did not indicate any registration by Faust. On one occasion between the two motel incidents, Faust took Bishop to a nearby public lake, where they again had relations.

On July 15, 1974, Faust was interviewed and counseled by a lieutenant of the Police Department who informed Faust of rumors concerning an affair between Faust and "a girl." The lieutenant specifically mentioned the rumored, unauthorized use of a Borough Councilman's swimming pool by Faust and "a girl." The lieutenant advised Faust that, if the rumors were correct, it was in his and the Department's best interest for Faust's association with the "girl" to cease. On that same date Faust called Bishop, and they mutually agreed to "cool it."

Three days later, on July 18, 1974, Faust telephoned Bishop, and, believing Bishop's husband would not return, they met in Bishop's residence. Bishop's two-year old son was present in the home at the time. Bishop's husband returned home and found Faust and Bishop together in the house. This was the first time Bishop's husband knew of the relationship. The Chief of Police received a phone call from the father of Bishop complaining about the situation. The Chief, after learning of the warning given just three days before, confronted Faust and Faust replied "I knew it would catch up with me sooner or later." The Chief delivered a written memorandum to the Borough Manager requesting a suspension of Faust and on the same day (July 19, 1974) the Borough Manager, acting under a delegation of powers from the Mayor, suspended Faust "pending further investigation until the next regular meeting of the Borough Council, which will be held Monday, August 5, 1974. The suspension is without pay." This letter stated that Faust was being charged with "an act of conduct unbecoming a police officer."

On August 5, 1974, Borough Council met and directed the Borough Solicitor to prepare charges based upon facts presented by the Chief. On August 9, 1974, Faust was served with a statement of the charges deemed by Borough Council "to constitute immorality and conduct unbecoming an officer."[1] Faust requested a hearing before the Police Civil Service Commission, which was held August 14, 1974. The Borough presented the testimony of five witnesses, including Mrs. Bishop, who confirmed all of the above facts pertaining to her relationship with Faust. Faust did not testify, nor present any evidence or testimony in his defense. The Commission upheld the dismissal and Faust took an appeal to the court below, which did not receive any additional testimony or evidence.[2] The court concluded that the facts presented to the Commission were sufficient to support the dismissal.

On appeal Faust argues that Section 1190(4) of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46190(4), under which the charges were brought is unconstitutional on its face because of vagueness; that this statutory provision is unconstitutional as applied to the facts; and that the record does not support a finding of conduct unbecoming

---

1. The statute, quoted *infra*, uses the disjunctive which suggests that "immorality" and "conduct unbecoming an officer" are distinct grounds and should be treated separately. To the extent that we treat the charges against Faust as one unit we recognize that one set of facts may support both charges and that the categories may, as a matter of law, overlap somewhat. In the instant case Faust's adulterous conduct is measured against community standards of morality. We believe the connection between this determination and the emphasis placed upon public respect for law enforcement officers in the definition of "conduct unbecoming an officer" is sufficiently clear to justify avoiding an overly technical approach to this case.

2. This procedure is in accordance with Section 1191 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46191.

a police officer. The essential facts, as stated above, are not in dispute.

In exercising our scope of review we must examine the record to determine whether the findings are supported by evidence and whether the Commission abused its discretion or committed an error of law. *Township of Upper Moreland v. Mallon,* 9 Pa. Commonwealth Ct. 618, 309 A.2d 273 (1973).

We begin with a reference to Section 1190 of the Borough Code, 53 P.S. §46190, which states in pertinent part:

> "No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons:
>
> . . . .
>
> "(4)· Inefficiency, neglect, intemperance, *immorality,* disobedience of orders, *or conduct unbecoming an officer."* (Emphasis added.)

The courts in this Commonwealth have had no problem with vagueness in interpreting the questioned wording of the statute. In *Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959), our Supreme Court stated:

> "Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the Bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in a public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt. . . . It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than that necessary to support the dismissal of a municipal employee.

It is sufficient that the complained of conduct and its attending circumstances be such as to offend publicly accepted standards of decency."

In *Baker Case,* 409 Pa. 143, 185 A.2d 521 (1962), our Supreme Court reaffirmed those principles. In *Baker* a police lieutenant was found in an illegal gambling establishment on three occasions and, although the police officer's presence there was not a crime *per se,* the Court concluded that such conduct "adversely affects the morale of fellow police officers and also tends to destroy public confidence in the ability and willingness of police officers to uphold law and order." 409 Pa. at 146, 185 A.2d at 522.

The gist of Faust's argument to this Court is that because (1) adultery is no longer a criminal act under the new Crimes Code, 18 Pa.C.S. §101 et seq.; (2) he was not in uniform nor "on duty" during the adulterous acts; and (3) he and Bishop carried on their adultery discreetly and in private, he should not be dismissed from the police force. Faust argues that such conduct is within the constitutionality protected rights of privacy, was not a disparagement of the badge and is in keeping with the modern "changed community standards of the last ten years." Faust also points out society's apparently inconsistent approach to moral values by noting that police do not arrest people for playing bingo or performing college pranks, such as "streaking." Faust's reasoning overlooks the fact that police officers are held to a higher standard of conduct than other citizens, including other public employees. This high standard, grounded in common sense, is statutorily mandated by the Borough Code. There is undoubtedly a compelling state interest in the maintenance of a high degree of public respect for police officers. We said in *Cerceo v. Darby,* 3 Pa. Commonwealth Ct. 174, 183, 281 A.2d 251, 255 (1971) :

"Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is

above and beyond reproach. The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold. He who fails to so comport brings upon the law grave shadows of public distrust. We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forbearance from overt and indictable illegal conduct. It demands that in both an officer's *private* and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is a repository. The record in this case indicates that the appellants acted in a questionable manner which could bring dishonor upon their profession, and which did indeed contribute to a weakening of the public confidence and trust." (Emphasis added.) *See also Kramer v. City of Bethlehem,* 5 Pa. Commonwealth Ct. 139, 289 A.2d 767 (1972).

We recognize that the General Assembly removed adultery from the Crimes Code, but that does not mean that adultery is looked upon as an accepted practice in this state. It is still a very serious matter in domestic relations and our divorce laws still permit an injured and innocent spouse to divorce his or her mate upon proof of adultery.[3] Although the General Assembly may have removed adultery as a crime, a great portion of our citizenry still believes it to be morally offensive. Furthermore, the very nature of adulterous conduct creates a disability in the police officer who practices it. Police officers, by virtue of their position, are routinely given license to enter private homes under a variety of circumstances. Whether the fear be real or imagined, it is not

3. *See* Section 10 (1) (c) of the Act of May 2, 1929, P.L. 1237, *as amended,* 23 P.S. §10 (1) (c).

difficult to foresee a certain amount of insecurity on the part of absent spouses when they consider that an officer with adulterous tendencies may be summoned in their absence. We also note that adultery tends to encourage disorder, violence and violations of the criminal law in certain circumstances. Many courts have held that the passion instilled in an enraged spouse who discovers an act of adultery is legally sufficient to reduce a resulting homicide to manslaughter.[4]

In arguing that the adultery here in question was committed only in private, Faust apparently implies that only public adultery may be deemed immoral or conduct unbecoming an officer, and, therefore, sufficient to support dismissal. While we do not believe that a distinction between "private" and "public" immorality or conduct has any bearing on the decision here, it is a sufficient answer to Faust's argument on this point to note that Faust's "private" conduct led to rumors, a warning by his superiors, and, eventually, the discovery of his relationship and a complaint by a citizen. These are uncontroverted record facts, and they are sufficient to make Faust's conduct a matter of legitimate concern to the Borough. Faust's attempts to keep his conduct private were obviously unsuccessful; his adulterous acts, in fact, became a matter of public knowledge.

The Chief testified that during Faust's tenure as a policeman two other officers were charged with the same or similar conduct. One was dismissed and the other left voluntarily to protect his employment record. The Chief also testified that adultery in his community violated "community standards" and this remains undisputed on the record. It was the Chief's observation that adultery performed by one of his police officers affects the morale of the department and reduces the effectiveness of police

---

4. *See,* e.g., *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972); and R. Perkins, *Criminal Law* (Second Ed., 1969), p. 64, and cases cited therein.

officers who observed whether one of their fellow officers was permitted to remain on the force under such circumstances.

In connection with the argument on vagueness, the United States Supreme Court in *Parker v. Levy*, 417 U.S. 733, 752 (1974) recently stated:

> "The [vagueness] doctrine incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement."

The record discloses that just three days before he was caught by Bishop's husband, Faust was warned by a superior police official. Faust acknowledged this warning by a phone call to Bishop in which he suggested that they "cool it." It would be difficult to imagine more notice.

Furthermore, the courts in this Commonwealth have stated on several occasions that off-duty conduct by policemen and firemen may be used as the basis for a charge of conduct unbecoming an officer, and Faust can hardly claim that he had no notice of this provision of the law. *See Zeber, supra; Vandergrift Borough v. Polito*, 397 Pa. 538, 156 A.2d 99 (1959); *Eppolito v. Bristol Borough*, 19 Pa. Commonwealth Ct. 99, 339 A.2d 653 (1975); and *Gabauer v. Civil Service Commission*, 6 Pa. Commonwealth Ct. 646, 297 A.2d 507 (1972). A review of Section 1190 of the Borough Code, 53 P.S. §46190, reveals that of the six separate bases for disciplinary action against a police officer, only two specifically relate to conduct while "on duty." The other four relate to conduct which can occur either "on duty" or "off duty."

In summary, we hold that adultery by a police officer, committed while not in uniform and off duty in a public motel and a public park is "immorality" and "conduct unbecoming a police officer" under Section 1190(4) of the Borough Code, 53 P.S. §46190(4). Order affirmed.