639 A.2d 1258

**BOROUGH OF RIEGELSVILLE**

v.

**Raymond W. MILLER, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1994.

Decided March 28, 1994.

Reargument Denied May 12, 1994.

656

Samuel A. Litzenberger, for appellant.

Jane E. Leopold–Leventhal, for appellee.

Before CRAIG, President Judge, NEWMAN, Judge, and LORD, Senior Judge.

NEWMAN, Judge.

Raymond W. Miller (Miller) appeals from an Order of the Court of Common Pleas of Bucks County which affirmed the determination by the Borough Council of Riegelsville (Council). Miller was discharged from his position as Chief of Police of Riegelsville Borough because he engaged in conduct that was "unbecoming an officer."

Miller, the only individual in the Borough's police force, was employed as its Chief of Police from January 1, 1985 to November 8, 1989, at which time he was suspended without pay. Two (2) months before his suspension, various newspaper reports circulated throughout the Borough which provided details of a paternity trial involving Miller and a former resident of the Borough, Deborah Morrison (Morrison). At all relevant times, Miller was married to someone other than Morrison.

As a direct result of the negative publicity, the chairman of the Borough's police committee, Council Member John Miller (Council Member Miller),[1] drafted four (4) separate charges against Miller, pursuant to the Police Tenure Act, 53 Pa.C.S. §§ 811–815. Prior to filing the charges, Council Member Miller engaged Douglas Maloney (Maloney) as independent counsel to prosecute the case. Maloney reviewed the charges and made several changes to them. Also prior to the filing of the charges, Council held an Executive Session, at which time the charges were read, and Miller's attorney, Samuel Litzenberger (Litzenberger), was made aware of the charges. Litzenberger, who was present at the session, had been told that during the November 8, 1989 Council meeting the charges against Miller would be presented.

1. Council Member Miller is no relation to Appellant Miller.

658

The charges were filed on November 8, 1989, and provided as follows:

1. That he did for a period in excess of one year commit acts of adultery with a Deborah Morrison resulting in the birth of a child all of which constitute conduct unbecoming an officer in that he failed to set a good example of character and respect for marital commitments and law in his job; all in violation of the provisions of the Police Tenure Act. [53 Pa.C.S. § 812(4)].

2. That he did fail to provide child support for his son born from the relationship with Deborah Morrison thereby failing to act as a proper role model in his job and further thereby violating the law requiring such support; all of which constitutes conduct unbecoming an officer and a violation of the Police Tenure Act. [53 Pa.C.S. § 812(4)].

3. That he did insist on a jury trial for the paternity and support of his son born of said relationship and that the verdict of the jury based on the testimony of Officer Miller shows that Officer Miller is lacking in credibility thereby undermining the confidence of the Borough and the citizens of Riegelsville specifically for the reason that his credibility in a court of law is essential to his job performance as a police officer; all of which constitutes conduct unbecoming an officer and is in violation of the Police Tenure Act. [53 Pa.C.S. § 812(4)].

4. That Officer Miller did bring notoriety and disrespect upon the Borough of Riegelsville, its police force and the public in general by generating a scandal of conduct unbecoming an office appearing on the front pages of local newspapers; all of which was a direct result of the police officer's acts of adultery, failing to support his child and insisting upon a jury trial wherein he testified that he had only a platonic relationship with Deborah Morrison. Said notoriety and disrespect created by the publicity has undermined Officer Miller's effectiveness as a police officer and constitutes conduct unbecoming an officer in violation of the Police Tenure Act. [53 Pa.C.S. § 812(4)].

As promised by the Borough, during the November 8, 1989 Council meeting, a copy of the filed charges was read and furnished to Litzenberger. In addition, the next day (November 9, 1989), the Borough mailed a copy of the charges to Miller's home as required by the Police Tenure Act, 53 Pa.C.S. § 812.

Miller requested a hearing pursuant to Section 814 of the Police Tenure Act, 53 Pa.C.S. § 814. Six (6) hearings were held on the matter from December 5, 1989 through January 24, 1990. During the hearings, Council was advised on certain matters by the Borough Solicitor, Charles H. Dorsett, Jr. (Dorsett).

Testimony at the hearings revealed that the charges against Miller were a result of the various newspaper articles which, according to Council Member Miller, created an atmosphere of mistrust, demoralization and ineffectiveness of the Borough Police Department. Moreover, Morrison testified that she had an intimate affair with Miller which resulted in a birth of their son. Also, Morrison testified that with the exception of Miller she did not have sexual intercourse with any other man for a period of one year preceding the birth of her son. Assistant District Attorney, John Kalinkos (Kalinkos), who had prosecuted the support/paternity suit on behalf of Morrison, presented details of the trial, such as docket entries, the support petition, the verdict slips of the jury, and copies of blood test reports (indicating the percentage of probability of paternity). Kalinkos, also presented statements made by Miller during the support/paternity trial, at which time Miller stated that his relationship with Morrison was purely platonic, that he was a happily married man, and that he never had sexual intercourse with Morrison. Kalinkos also informed Council that the jury found in favor of Morrison. Morrison's baby-sitter, Jodi Riddle, testified that Morrison had told her that Miller was the father of her expected child, and she remembered seeing Miller's uniform on the door of Morrison's bedroom closet.

In presentation of his defense, Miller presented numerous character witnesses who all testified that he was a good police

officer with a good reputation in the community. Moreover, Miller's own testimony was restricted to trying to establish bias by certain members of Council. Miller was never cross-examined.[2]

On January 24, 1990, Council voted to sustain the first three (3) charges against Miller, and to dismiss the fourth by a vote of five (5) to one (1). Miller appealed to the Court of Common Pleas of Bucks County. That court decided against conducting a *de novo* hearing because there was sufficient evidence introduced during the six (6) hearings to conduct a meaningful review. On January 22, 1993, the trial court affirmed Council's decision to terminate Miller since it found there was clear and convincing evidence to support the three (3) charges against him. Miller has presently appealed to this court.

Our standard of review, where a trial court has taken no additional evidence, is limited to determining whether Council committed an abuse of discretion or an error of law, based upon the evidence before it. *Kazmarek v. New Bethlehem Borough Council,* 84 Pa.Commonwealth Ct. 19, 478 A.2d 514 (1984).

Miller alleges six (6) separate challenges to the trial court's adjudication. Initially, Miller contends that the charges of adultery and failure to pay child support, as well as his lack of credibility, are insufficient as a matter of law to constitute "conduct unbecoming an officer," since the charges, even if proved, did not affect his performance, and did not corrupt the

2. Miller was scheduled to be cross-examined on January 24, 1990. However, on January 16, 1990, Miller's attorney faxed a note to Council stating that "The hearing must be continued because Ray is unavailable". Council responded by fax and asked why Miller was unavailable. Miller's attorney responded by letter dated January 23, 1990 and said that because Miller had a new job, he could not be absent from work.

Miller's attorney appeared at the hearing on January 24, 1990, and asked for a continuance. Council denied the request, claiming that at least ten (10) other people involved in the hearings would have to conform to Miller's schedule. Miller's attorney then called an additional character witness, and after that testimony, he rested his case. Council never ruled on the motion of Special Prosecutor Maloney to strike Miller's direct testimony.

community. Second, Miller argues that the Borough should have been estopped from bringing the charges since it knew the facts of the case for a long period of time. Third, Miller claims that he was denied due process of law because there was a commingling of the adjudicative and prosecutorial functions by Council because Solicitor Dorsett was permitted to act as "Judge." Fourth, Miller asserts that the charges against him were the result of bias on the part of certain members of Council. Fifth, Miller contends that Council never had sufficient members present to constitute a quorum to adjudicate the matter. Finally, Miller contends that he had not been given proper notice of the charges by the Borough pursuant to the Police Tenure Act's notice requirement, 53 Pa.C.S. § 812.

■ Each issue will be dealt with seriatim.[3]

## AS A MATTER OF LAW, DO THE CHARGES FILED CONSTITUTE CONDUCT UNBECOMING AN OFFICER?

■ In his brief, Miller assumes that adultery and the other charges were established by the Borough at the hearings; however, he still contends that his discharge was inappropriate because these actions cannot as a matter of law constitute "conduct unbecoming an officer."

Although discharged for adultery, failure to pay child support, and for failure to demonstrate credibility, Miller only addresses the first charge. Miller believes that since his adulterous conduct was private, it did not affect his job performance, and it cannot, therefore, be a proper basis for

**3.** The Borough argues that we should dismiss this appeal because of Miller's lack of compliance with the Rules of Appellate Procedure. Specifically, Miller's brief violated Rules of Appellate Procedure 2111(b), 2116, 2117, and 2119. The Borough refers to two of this Court's cases in support of its position. *Stefanovits v. Magrino*, 136 Pa.Commonwealth Ct. 290, 583 A.2d 841 (1990) and *Betz v. Unemployment Compensation Board of Review*, 115 Pa.Commonwealth Ct. 481, 540 A.2d 640 (1988).

A review of Miller's brief reveals that although not in compliance with the Rules, it nevertheless permits meaningful appellate review. Thus, we shall discuss the merits of Miller's arguments.

his discharge pursuant to Section 812(4) of the Police Tenure Act. This section provides in pertinent part:

**Section 812.  Removals**

No person employed as a regular full time police officer in any police department of any township ..., shall be suspended, removed, or reduced in rank except for the following reasons:

.     .     .     .     .

(4) Inefficiency, neglect, intemperance, disobedience of orders, or **conduct unbecoming an officer.**

53 Pa.C.S. § 812(4).  (Emphasis Supplied)

In discussing what constitutes "unbecoming conduct" on the part of a municipal employee, our Supreme Court has stated:

Unbecoming conduct on the part of a municipal employee, especially a policeman ... is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned....   Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services.

*Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959). Furthermore, our court in *Cerceo v. Darby,* 3 Pa.Commonwealth Ct. 174, 183, 281 A.2d 251, 255 (1971), wrote:

Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is above and beyond reproach.  The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold....   We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions.

Legal precedent in this Commonwealth has set forth that the commission of adultery, although no longer a criminal act, is sufficient to permit removal of a police officer.  *Fabio v. Civil Service Commission of the City of Philadelphia,* 30

Pa.Commonwealth Ct. 203, 373 A.2d 751 (1977), *aff'd,* 489 Pa. 309, 414 A.2d 82 (1980); *See also Faust v. Public Civil Service Commission of Borough of State College,* 22 Pa.Commonwealth Ct. 123, 347 A.2d 765 (1975).

In *Fabio,* this court stated:

Although the general assembly has removed adultery from the crime code, we have no doubt that most of our citizenry still believe it to be morally offensive and an unaccepted practice. In domestic relations it is still a very serious matter and our divorce laws still permit an injured and innocent spouse to divorce his or her mate upon proof of adultery.

*Fabio,* 30 Pa.Commonwealth Ct. at 208, 373 A.2d at 754.

Miller attempts to distinguish *Fabio* by maintaining that in that case the police officer's adultery was conducted in public and on-duty, which necessarily brought scorn to the community, whereas Miller's acts occurred only in private and off-duty. Miller is simply misreading and misinterpreting relevant legal authority.

*Fabio* involved a discharge of a police officer who induced his wife to consent to an extramarital affair with another police officer, while at the same time, the officer engaged in a sexual relationship with his wife's eighteen year old sister. This court stated that the officer's discharge was proper since off-duty behavior by policemen may be used as a basis for a charge of conduct unbecoming an officer. *Id.* at 210, 373 A.2d at 754.

Initially, it must be noted that the adultery in *Fabio,* like the adultery in the instant case, occurred off-duty. Moreover, in the *Fabio* case, this court stated:

While we do not believe that a distinction between 'private' and 'public' immorality or conduct has any bearing on the decision here, it is a sufficient answer to Fabio's argument on this point to note that Fabio's 'private' conduct led to rumors and, eventually, the discovery of his relationship.... These are uncontroverted record facts, and they are sufficient to make Fabio's conduct a matter of legitimate concern to the City of Philadelphia. Fabio's attempts to keep his

conduct private were obviously unsuccessful; his adulterous acts, in fact, became a matter of public knowledge.

*Id.* at 210–211, 373 A.2d at 755. In the instant case, as in *Fabio*, Miller's attempts to keep his adulterous affair private, failed. It is an undisputed fact that newspaper accounts appeared throughout the Borough in the month of September of 1989, and they detailed the adulterous affair between Miller and Morrison. In his brief, even Miller acknowledges that the affair was public knowledge. Miller's Brief at 15. Obviously, this became a legitimate concern to the Borough.[4] Accordingly, Miller has failed to distinguish *Fabio*, and his arguments in this regard must be rejected.[5] Miller's remaining challenges can be dealt with summarily since he fails to substantiate any of his arguments.

## SHOULD COUNCIL HAVE BEEN ESTOPPED FROM BRINGING THE CHARGES?

■ Miller next argues that Council should have been estopped from bringing this action since members of Council knew for at least three (3) years of his affair with Morrison.

4. To the extent that Miller is raising a right to privacy constitutional challenge to his termination, this argument must be likewise rejected. When our Supreme Court affirmed *Fabio*, it held that the police officer's privacy argument must be rejected for four reasons. First, the court noted that we have held police officers to a higher standard of conduct than other citizens, including other public employees. Second, the government has a compelling state interest in the maintenance of public respect for police officers. Third, the government has a compelling interest in employing efficient and effective law enforcement officers. Fourth, the government has a compelling interest in maintaining harmony among its employees and has the clear right to eliminate corrupting influences.

   Consequently, given these stated interests, the Council's adjudication did not improperly infringe upon Miller's right to privacy.

5. Since that we have decided that adultery is sufficient to constitute "conduct unbecoming an officer," there is no need to decide whether failure to pay child support and lack of credibility constitute "conduct unbecoming an officer." The issue of whether failure to pay child support constitutes "conduct unbecoming an officer" has never been addressed by any of our courts. With respect to the successful remaining charge, in *City of York v. Hallway*, 21 Pa.Commonwealth Ct. 322, 345 A.2d 776 (1975), this court affirmed the discharge of a police officer for, *inter alia*, lacking veracity.

Miller utterly fails to substantiate his charge that Council knew of his adulterous affair three (3) years before bringing the charges. In fact, even if Council was aware of purported rumors involving Miller and Morrison, this does not provide Miller with any relief. The trial court's response is especially apropos in this regard. The trial court stated:

> Prior to the well-publicized paternity trial, there were only unconfirmed rumors that [Miller] was the father of Morrison's child. Surely [Miller] is not arguing that the Police Committee could have brought charges against him based on rumors but cannot based on the findings of a jury.

Trial Court opinion, at 8. Moreover, the record indicates that Council became concerned about Miller when newspaper accounts began circulating throughout the Borough detailing the facts of the paternity trial, which caused a feeling of demoralization by the public concerning the Riegelsville police force. The record clearly demonstrates that the newspaper accounts, circulated throughout the Borough in September of 1989, caused Council to file the charges against Miller on November 8, 1989. Thus, under any reasonable reading of the matter, the Borough could not be held to have been dilatory, and should not be estopped from bringing the instant charges.

## WAS THERE AN IMPROPER COMMINGLING OF THE ADJUDICATIVE AND PROSECUTORIAL FUNCTIONS BY COUNCIL?

Miller argues that Dorsett, the Borough Solicitor, was improperly permitted to commingle the prosecutorial and adjudicative functions of the proceedings by participating in the drafting of the charges, acting as advisor to Council, and preparing its final decision. Again, as in the preceding issue, Miller presents his arguments in a vacuum with no supporting facts.

A review of the record indicates that Dorsett never participated in the drafting of the charges. It is clear that Council Member Miller and Maloney, the Special Prosecutor, drafted the charges. Moreover, Dorsett's function as Solicitor was limited to advising Council of certain procedural and substan-

tive issues that necessarily arose during the hearings. Contrary to Miller's protestations, Dorsett did not have, nor did he cast, a vote in the matter. Since Dorsett was neither involved in the prosecutorial, nor adjudicative functions, there was no improper commingling of these functions by Council. *See e.g., Kelly v. Warminster Township Board of Supervisors,* 44 Pa.Commonwealth Ct. 457, 404 A.2d 731 (1979).

## WERE THE CHARGES AGAINST MILLER THE RESULT OF BIAS BY COUNCIL MEMBERS?

■ Miller contends that because several Council members may have been aware of the rumored affair between him and Morrison before the filing of the charges, these Council members were necessarily biased, resulting in a denial of his due process rights. Moreover, Miller also asserts that certain Council members were biased because of his enforcement of various skateboarding ordinances against some of their children.

In *Gabauer v. Civil Service Commission of Borough of Rochester,* 6 Pa.Commonwealth Ct. 646, 658, 297 A.2d 507, 514 (1972), this court stated that bias is "shown where there is a one-sided approach; where there is not an even-handed consideration of the matter."

Miller has completely failed to establish any bias attributable to certain Council members that would have infringed his due process rights. Both allegations of bias are unsubstantiated. Furthermore, the record independently establishes that Miller's conduct constituted sufficient grounds for removal, and the charges were not a result of any alleged bias. This issue is without merit.

## DID COUNCIL DURING THE HEARINGS HAVE THE REQUISITE NUMBER OF MEMBERS SUFFICIENT TO CONSTITUTE A QUORUM?

■ At oral argument, Miller maintained that Council's adjudication of January 24, 1990 was rendered by individuals who were not members of Council when the hearings began on December 5, 1989. Initially, it should be noted that this issue was not presented in Miller's brief in the Statement of the

Questions Involved, and is thus considered waived. *East Allegheny School District v. Secretary of Education*, 145 Pa.Commonwealth Ct. 477, 603 A.2d 713 (1992). *See also Triage, Inc. v. Department of Transportation*, 113 Pa.Commonwealth Ct. 348, 537 A.2d 903 (1988).

■ Even if we were to consider the merits of the issue, the ultimate resolution of the matter would not change. Present at the initial hearing of December 5, 1989 were George Herzog, Ruth Banko, Candace Croft, Thomas Stinnett, Richard Strawn, and Dale Young. Also in attendance were Dorris Edinger and Joseph Randazzo. With the exception of the Council meeting of January 9, 1990,[6] the Council members remained the same. The same six (6) individuals who comprised Council on December 5, 1989 were the ones who cast the final vote on January 24, 1990 and discharged Miller. Accordingly, Miller's arguments in this respect are without merit.

## WAS MILLER PROVIDED NOTICE PURSUANT TO THE STATUTE?

■ Miller finally claims that he was not given the proper five (5) day notice of the charges as required by the Police Tenure Act, 53 Pa.C.S. § 812.[7]

In interpreting this section, this court explained that:

There are at least three reasons for requiring this procedure: (a) that the employee may be informed of what misbehavior he is accused of and rectify it if he so chooses; (b) that the employee can determine whether the charges are statutorily sufficient, and (c) he can decide whether to

6. At that meeting, Council President Herzog was absent.

7. The pertinent part of the section provides:

A written statement of any charges made against any person so employed shall be furnished to such person within five days after same are filed.

53 Pa.C.S. § 812.

take an appeal to the Civil Service Commission, and if he does, to file a timely answer.

*Cerceo v. Borough of Darby,* 3 Pa.Commonwealth Ct. 174, 181, 281 A.2d 251, 254 (1971), *quoting, Gardner v. Repasky,* 434 Pa. 126, 128, 252 A.2d 704, 705 (1969).

A review of the record demonstrates that the Borough complied with the above section. The Borough filed and announced the charges against Miller on November 8, 1989, at a hearing conducted that evening before the Executive Board of the Borough. Miller's attorney was present at that meeting, and was provided details and a copy of the charges. In addition, prior to the expiration of the five (5) days which followed the filing of the charges against Miller, the Borough forwarded the filed charges to Miller's home. Given the stated rationale of the notice rule, even if we were to accept Miller's argument that he did not receive notice, this contention is without merit since he has not shown how he was prejudiced.

Accordingly, for the preceding reasons, the order of the Court of Common Pleas of Bucks County is hereby affirmed.

## ORDER

AND NOW, March 28, 1994, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.