Nicholas DiCiacco, Appellant *v.* Civil Service Commission of City of Philadelphia.

Joseph Gottwald, Appellant *v.* Civil Service Commission of City of Philadelphia.

John Gerace, Appellant *v.* Civil Service Commission of City of Philadelphia.

Francis Kieffer, Appellant *v.* Civil Service Commission of City of Philadelphia.

Argued April 6, 1978, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*A. Charles Peruto,* with him *Burton Rose,* for appellants.

*Ralph J. Teti,* Assistant City Solicitor, with him *James M. Penny, Jr.,* Deputy City Solicitor, *James M. Moran,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE MENCER, July 31, 1978:

These appeals have been taken by four policemen from orders of the Court of Common Pleas of Philadelphia County affirming their dismissals by the Civil Service Commission.[1] All four had been charged with conduct unbecoming an officer in their handling of cases involving narcotics, and each had been dismissed on the basis of his own statements in response to interrogation by other police officers. Since a statement made by Officer Kieffer was improperly admitted into evidence, we reverse as to him, but affirm

---

[1] The incidents which gave rise to these proceedings occurred in 1971, and the decisions of the Civil Service Commission were rendered either in late 1972 or early 1973. However, the lower court, which did not receive additional evidence, did not hand down its orders until late 1976, with opinions following in early 1977. Such an extended delay in reaching a decision at the common pleas level works a substantial hardship on the parties, and it is hoped that such delays can be avoided in the future.

the dismissal of Officers DiCiacco, Gottwald and Gerace.

The dismissed policemen raise three arguments here: (1) The officers' statements should not have been admitted without a showing of "corpus delicti," *i.e.*, without independent proof that the substances with which they came into contact were in fact heroin and that some wrongdoing had occurred, (2) the statements which were made under compulsion of being fired under Section 10-110 of the Philadelphia Home Rule Charter (Charter) were inadmissible, and (3) there was no substantial competent evidence in the record to justify their dismissal.

Our scope of review here is limited by Section 8(b) of the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. §11308(b). We must affirm the adjudication below unless constitutional rights have been violated, the provisions of the Local Agency Law have not been complied with in the proceeding before the Commission, an error of law has been committed, or the findings of the Commission are not supported by substantial evidence. *Richter v. Philadelphia Civil Service Commission*, 35 Pa. Commonwealth Ct. 310, 387 A.2d 131 (1978); *Harrington v. Philadelphia Civil Service Commission*, 4 Pa. Commonwealth Ct. 580, 287 A.2d 912 (1972).

I. *Corpus Delicti*

We find the corpus delicti argument to be without merit. By definition, "corpus delicti" means "the body of a *crime*." Black's Law Dictionary 413 (rev. 4th ed. 1968) (emphasis added). Appellants have not offered any noncriminal cases in support of their position, and we therefore decline to impose such a requirement on civil service proceedings.

## II. *Statements Made Under Section 10-110*

The question of the admissibility of statements made under the compulsion of the Charter provision poses a more difficult problem. At the time, Section 10-110 provided:

> If any officer or employee of the City shall willfully refuse or fail to appear before any court, or before the Council, or any committee thereof, or before any officer, department, board, commission or body authorized to conduct any hearing or inquiry, or having appeared, shall refuse to testify or to answer any question relating to the affairs or government of the City or the conduct of any City officer or employee on the ground that his testimony or answers would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify before such court or at any such hearing or inquiry, he shall forfeit his office or position, and shall not be eligible thereafter for employment to any position in the City service.

The Commission has argued that this issue has not been properly preserved for review by this Court. As to Officers DiCiacco and Gottwald, we agree. The decisions of the Commission as to these two officers were handed down in November 1972 and "exceptions" were filed with the lower court in December 1972. Two issues were raised in these "exceptions": the corpus delicti question and a substantial-evidence argument. In contrast, the "exceptions" filed with the lower court in February 1973 to the decisions of the Commission dated January 19, 1973 as to Officers Gerace and Kieffer raised three issues: corpus delicti, substantial evidence, and whether the Commission improperly ad-

mitted into evidence their statements in that they were not the product of a voluntary and free will. In the opinions by the Commission and the lower court, the effect of Section 10-110 on the voluntariness of the statements was not discussed.

It is well settled that issues which have not been raised in the lower court are waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a); *Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845 (1974). While the issue has not been preserved as to Officers DiCiacco and Gottwald, as indicated by the "exceptions," with respect to Officers Gerace and Kieffer we believe the "exceptions" filed in the lower court constituted a sufficient raising of the issue as to them.

The circumstances surrounding the statements by Officer Kieffer are as follows. On August 25, 1971, he appeared with his attorney at staff inspector headquarters and was told, "This is an official investigation and under the provisions of the Philadelphia Home Rule Charter, Section 10-110, you are required to cooperate fully and answer all questions." When asked if he understood, he replied that he did. He proceeded to make a statement in which he admitted retaining some narcotics and on two occasions giving a small quantity of narcotics to another police officer at the other officer's request. On August 27, 1971, he appeared at headquarters again, was read the warnings required by *Miranda v. Arizona,* 384 U.S. 436 (1966),[2]

---

[2] He was instructed:

We have a duty to explain to you and to warn you that you have the following legal rights:

A. You have a right to remain silent and do not have to say anything at all.

B. Anything you say can and will be used against you in Court.

was again told that he must answer all questions under Section 10-110, and made a supplemental statement. Nothing said in this statement provided the basis for his discharge. Both statements were admitted into evidence by the Commission.

Our discussion of the admissibility of the statement made on August 25 begins with an examination of two cases dealing with the use of statements made under a similar provision in a subsequent *criminal* prosecution. In *Garrity v. New Jersey,* 385 U.S. 493 (1967), the United States Supreme Court reversed the convictions of police officers who had made statements after being warned that, if they refused to answer questions, they would be subject to removal from office under a provision of a New Jersey statute similar to Section 10-110 of the Charter. The Court reasoned that the use of such statements was improper since the officers were given the choice between self-incrimination and job forfeiture, and the Fourteenth Amendment precluded the use of statements made under such duress or coercion in subsequent criminal prosecutions.[3] The *Garrity* decision was specifically recognized and followed by the Pennsylvania Supreme Court in *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975). In *Trip-*

---

    C. You have a right to talk to a lawyer of your own choice before we ask you any questions, and also to have a lawyer here with you while we ask questions.

    D. If you cannot afford to hire a lawyer, and you want one, we will see that you have a lawyer provided to you free of charge before we ask you any questions.

    E. If you are willing to give us a statement, you have a right to stop any time you wish.

   [3] In *Spevack v. Klein,* 385 U.S. 511 (1967), decided at the same time as *Garrity,* the Court held that, under the Fifth and Fourteenth Amendments, an attorney could not be disbarred for refusing to honor a subpoena duces tecum and refusing to testify in a disciplinary proceeding on the ground that such evidence would tend to incriminate him.

*lett,* the Court held that a statement made by a police officer under compulsion of being fired under Section 10-110 of the Charter, the exact provision involved in the instant case, was constitutionally infirm and could not be used for any purpose against the officer in a subsequent criminal proceeding.

With *Garrity* as background, the United States Supreme Court was faced with another case involving police officers and a provision similar to Section 10-110 in *Gardner v. Broderick,* 392 U.S. 273 (1968). There, a provision of the New York City Charter stated that if an officer refused to testify or answer questions on City matters or refused to waive immunity from prosecution, he would be dismissed. Gardner had been dismissed for refusing to sign a "waiver" of immunity" when called before a grand jury. In his action for reinstatement, the Court reversed his dismissal and struck down the Charter provision, reasoning that "the mandate of the great privilege against self-incrimination *does not tolerate the attempt, regardless of its ultimate effectiveness,* to coerce a waiver of the immunity it confers on penalty of the loss of employment." 392 U.S. at 279 (emphasis added). *See also Uniformed Sanitation Men Association v. Commissioner of Sanitation of the City of New York,* 392 U.S. 280 (1968) (companion case to *Gardner*). Since Section 10-110 involves an identical attempt to coerce a waiver of immunity, we hold that it is also constitutionally defective.

Since *Gardner* involved a policeman who refused to make a statment and was dismissed for this refusal, while Kieffer actually made an incriminating statement, we are confronted with a slightly different inquiry here, *i.e.,* the admissibility of evidence compelled under such a provision. The language quoted above from *Gardner* strongly suggests that, since it is *the at-*

*tempt* to coerce a waiver of the Fifth Amendment right against self-incrimination which is constitutionally infirm, a statement made under such circumstances should be excluded. The Court clarified this point in *Lefkowitz v. Turley,* 414 U.S. 70 (1973). The statute there provided that if a contractor refused to answer questions or to waive immunity from prosecution when called to testify concerning his contracts with the state, his existing contracts could be canceled and he would be disqualified from further dealings with the state for a period of time. Faced with the case of two architects who had refused to sign waivers of immunity, the Court held that the statute was unconstitutional, making this comment on the admissibility of any statement made under these circumstances: "[A]nswers elicited upon the threat of the loss of employment are compelled and inadmissible in evidence." 414 U.S. at 85.

Returning our attention to the case at bar, the statement by Kieffer on August 25 was made immediately after he received the warning under Section 10-110 of the Charter which requires a waiver of Fifth Amendment rights under threat of being fired.[4] Thus, *Gardner* and *Lefowitz* mandate its exclusion, and the Commission erred in considering it as evidence.[5]

---

[4] Although the entire text of Section 10-110 was not read to Kieffer, this was unnecessary. The reference made to the Charter provision was the same as that made to the police officer in *Triplett, supra.*

[5] As one commentator to the *Gardner* decision stated,

if a state demanded a waiver of the Garrity immunity [from prosecution] or advised that testimony given in administrative proceedings could be used in court and thereby cause a post-Garrity employee to fear criminal consequences, these state actions would be improper on grounds of due process. On the one hand the state would be demanding a waiver with no legal effect; on the other it would be giving its employee erroneous advice.

*The Supreme Court: 1967 Term,* 82 Harv. L. Rev. 63, 208 (1968).

This conclusion should not be interpreted as suggesting that public employers cannot question their employees on matters relating to their employment and dismiss them, either on the basis of their answers or for refusing to answer. They may do so as long as they have not indicated to the employee that assertion of his constitutional right to remain silent or a refusal to waive immunity from prosecution will constitute grounds for discharge. The Court, in *Uniformed Sanitation Men Association, supra,* stated as follows:

> As we stated in Gardner v. Broderick, supra, if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. . . . [P]etitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.

392 U.S. at 284-85.

*See, e.g., Uniformed Sanitation Men Association v. Commissioner of Sanitation of the City of New York,* 426 F.2d 619 (2d Cir. 1970), *cert. denied,* 406 U.S. 961 (1972).

The result in our recent decision in *Leroi v. Philadelphia Civil Service Commission,* 34 Pa. Commonwealth Ct. 190, 382 A.2d 1260, 1263-64 (1978), is not in conflict with our decision here. While some language

in that opinion suggests that we may consider testimony given under both the Charter provision and the *Miranda* warnings, even though the two are somewhat contradictory,[6] *Leroi* stands for the proposition that it is not reversible error for the Commission to consider a statement made under such circumstances when it does not contain self-incriminating remarks. The same can be said here as to Officer Kieffer's statement on August 27, since nothing in that statement provided the basis of his discharge.

With respect to Officer Gerace, the record reveals that no reference to the warning in Section 10-110 of the Charter was ever made.[7] He was given the standard *Miranda* warnings, and then he agreed to make a statement. We do not think that the mere existence of Section 10-110 is sufficient to render the statement the product of coercion since, where the Charter warning is never actually given, no attempt to use Section 10-110 to coerce a statement is being made. *See Gardner, supra.* This view is in accord with a recent decision of the Superior Court in *Commonwealth v. Kelly,* 245 Pa. Superior Ct. 351, 369 A.2d 438 (1976).

III. *Substantial Evidence to Justify Dismissal*

The appellants appear to argue that the findings of fact of the Commission are not supported by substantial evidence and that such findings, in any event, do not justify their dismissal. All of the policemen were charged with "conduct unbecoming an officer," which has been explained as follows:

> Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman,

---

[6] The contradiction arises when the employee is told that he has a right under *Miranda* to remain silent, to say nothing at all, but then is told that if he exercises this right, he will be discharged under Section 10-110.

[7] The same is true as to Officer DiCiacco, who did not preserve this issue for appeal.

is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. . . . [I]t is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character. . . .
*Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959).

Turning now to the evidence in each case, we see that Officer DiCiacco made a statement in which he said that he observed a known drug pusher drop six bags of heroin in late 1970. Instead of turning in these narcotics, he retained possession of them and subsequently asked an 18-year-old male for information concerning the sale of narcotics in a hoagie shop in exchange for the heroin. Officer DiCiacco gave him the narcotics but never received the information. Before the Commission, he claimed that this statement was false, that he made it up because he thought it was what the inspectors questioning him wanted to hear. For the Commission to have believed his original statement and to make findings based thereon was not improper.

A statement given by Officer Gottwald indicated that he and another officer had found some narcotics in a mailbox while on duty in early 1971, that he retained three bags of heroin from this discovery, that he subsequently gave the narcotics to the other officer, who thereafter pestered him for more narcotics, and that he did not report any of this to his superior. In a later statement, he denied the earlier statement, said that he did not remember making it, and gave a new version of the incident which involved no wrongdoing on his part. In light of this evidence, the Commission's findings based on the earlier statement are supported by substantial evidence.

As to Officer Gerace, he made two statements at staff inspector headquarters. In the first, he stated that in May 1971 he and other officers had retrieved some narcotics from a sewer and a police sergeant had instructed him to keep a bundle for himself. He. went on to say that he had done so to pacify the sergeant but later returned the bundle. In the second statement, he indicated that later in the day of the recovery of the narcotics from the sewer he took another bundle of 25 bags of narcotics while he was assigned to count them. Although he stated that he threw this bundle away after several weeks, it was his opinion that he was keeping the narcotics for use in future arrests. He also stated that a certain police officer had admitted to him that he smoked marijuana at parties. Officer Gerace did not report any of these facts to his superiors. In the absence of any evidence, aside from general character evidence, to the contrary, it certainly was not improper for the Commission to make findings in keeping with the above evidence.

Considering the findings of fact as to Officers DiCiacco, Gottwald, and Gerace, we have no doubt that their activities constituted the type of unbecoming conduct described in *Zeber, supra,* and which justified their dismissal. The drug problem in this country has taken on vast dimensions in recent years. As the Commission noted in its opinion as to Officer Gerace, "we are not sympathetic to persons who are paid as guardians of our society and who nonetheless contribute to the increasing complexity of one of our greatest social problems." Therefore, we affirm the dismissal of Officers DiCiacco, Gottwald, and Gerace.

With respect to Officer Kieffer, we must reach the opposite result. Since his statement on August 25 was improperly admitted into evidence, there is no evidence remaining on the record to support his dis-

missal. The Police Department chose to base its entire case on this constitutionally defective statement. We are cognizant of the fact that in December 1972, when the hearing before the Commission was held, the admissibility of statements made under Section 10-110 of the Charter had not been specifically decided in Pennsylvania. We also realize that a disservice to the citizens of Philadelphia could result from the continued employment of a police officer who has provided reason to question his entitlement to the public trust. Therefore, our decision here is to remand to the Court of Common Pleas of Philadelphia County, with direction to return the Kieffer case to the Civil Service Commission of the City of Philadelphia for further hearing. *See, e.g., Uniformed Sanitation Men Association v. Commissioner of Sanitation of the City of New York, supra* (after United States Supreme Court reversed dismissal of employee, new inquiry instituted, different set of warnings and rights given, and Second Circuit Court of Appeals affirmed employee's dismissal for refusing to answer questions concerning his official duties).

Orders affirmed as to appellants Nicholas Di-Ciacco, Joseph Gottwald, and John Gerace. Order reversed as to appellant Francis Kieffer and case remanded, with direction to return it to the Civil Service Commission of the City of Philadelphia for further hearing, consideration, and disposition not inconsistent with the opinion of this Court.

ORDER IN 1726 C.D. 1976

AND Now, this 31st day of July, 1978, the order of the Court of Common Pleas of Philadelphia County in the above captioned case, dated September 7, 1976, is hereby affirmed.

### Order in 1727 C.D. 1976

And Now, this 31st day of July, 1978, the order of the Court of Common Pleas of Philadelphia County in the above captioned case, dated September 7, 1976, is hereby affirmed.

### Order in 1728 C.D. 1976

And Now, this 31st day of July, 1978, the order of the Court of Common Pleas of Philadelphia County in the above captioned case, dated September 7, 1976, is hereby affirmed.

### Order in 1729 C.D. 1976

And Now, this 31st day of July, 1978, the order of the Court of Common Pleas of Philadelphia County in the above captioned case, dated September 7, 1976, is reversed, and the case is remanded to said court, with direction to return it to the Civil Service Commission of the City of Philadelphia for further hearing, consideration, and disposition not inconsistent with the opinion of this Court.