William K. COOPER, Petitioner,

v.

DEPARTMENT OF BANKING, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 1998.

Decided Nov. 19, 1998.

Robert E. Welsh, Jr., Philadelphia, for petitioner.

Reginald S. Evans, and David H. Bleicken, Harrisburg, for respondent.

Before JAMES GARDNER COLINS, President Judge, JOSEPH T. DOYLE, J. (P.) and CHARLES P. MIRARCHI, Jr., Senior Judge.

COLINS, President Judge.

William Cooper petitions for review of the Secretary of Banking's order that permanently removed Cooper from his position on the credit committee of the Boeing Helicopters Credit Union (Credit Union) and prohibited him from participation in any manner in the affairs of the Credit Union.

The facts in this case are undisputed. In December 1995, the Department of Banking notified Cooper that he was temporarily suspended from his position as chairman of the Credit Union's credit committee pending a hearing to determine whether Cooper should be permanently removed for breach of fiduciary duty. The notice charged Cooper with engaging in unsafe and unsound financial practices that carry the potential for financial loss, that prejudiced the Credit Union's interests, and that exhibited a disregard for the Credit Union's financial soundness. The notice declared the Department's intention to seek Cooper's removal from office and to prohibit him from all further participation in the affairs of the Credit Union.

The practices underlying Cooper's suspension came to light as a result of risk management audits conducted by CUNA Mutual Insurance Group. CUNA reported its results to the Department of Banking as well as to the Credit Union's board of directors. In November 1994 CUNA notified Cooper that it was terminating his bond coverage as a result of the loan approval practices that placed the Credit Union at increased risk. In May 1995, after Cooper lost an appeal of the termination of his bond eligibility, CUNA offered to reinstate the Credit Union's full bond eligibility if credit committee members were terminated; in the alternative, it offered to reinstate the bond eligibility of the credit committee members by imposing a $5,000–per–loan deductible for any losses involving loans approved in violation of the Credit Union's policies and procedures. The Credit Union chose the second alternative, which required the approval of state and federal regulators. In September 1995, the National Credit Union Administration (NCUA) notified the Department of Banking that the $5,000–per–loan deductible violated the maximum permitted by NCUA regulation. The letter explained that the NCUA would forgo administrative action against the credit committee members in exchange for their resignations and written agreements that they would never again serve as officials, employees, consultants, or agents of the Credit Union.

After a hearing, at which the parties stipulated to the salient facts, the hearing examiner concluded that Cooper failed to conduct the loan approval process of the credit committee in accordance with the Credit Union's by-laws and failed to observe statutory loan procedures as set forth in the Credit Union Code, 17 Pa.C.S. § 713, and that Cooper's conduct had jeopardized the Credit Union's regulatory certification. Specifically, Cooper approved loans without convening the committee and without obtaining the required majority approval; on numerous occasions Cooper independently approved loans using the forged signatures of two other committee members.[1] The hearing examiner recommended that Cooper be permanently removed from the credit committee.

Cooper filed a brief on exceptions to the hearing examiner's findings of fact and conclusions of law in which he objected to the recommendation to the extent that it failed to set forth the parameters of his removal. Cooper requested that the recommendation be amended to reflect that he was to be removed only from service on the credit committee. The Department opposed the exception, stating that the law permits permanent

1. The record indicates that Cooper signed the names of the other two committee members with their permission.

removal of Cooper from all participation in the Credit Union's affairs. The Secretary of Banking adopted the hearing examiner's findings and conclusions and addressed the issues raised by way of exceptions. The Secretary found that Cooper had notice that the Department was seeking to prohibit him from all participation in Credit Union affairs. The Secretary concluded that 17 Pa.C.S. § 503(a) gives the Department broad authority to regulate credit unions and to protect their members, and upheld the Department's interpretation of 17 Pa.C.S. § 503(b) as authorizing Cooper's permanent removal from the Credit Union's affairs.

On appeal, Cooper raises the same issues that he raised by way of exceptions: 1) whether 17 Pa.C.S. § 503 authorizes the Department of Banking to remove a committee member from all participation in a credit union's affairs, and 2) whether the Secretary's order prohibiting all participation in the Credit Union's affairs violated his due process rights under the state and federal constitutions.

The Credit Union Code places credit unions under the supervision of the Department of Banking. 17 Pa.C.S. § 503 addresses regulation of credit unions, in pertinent part,

> (a) **General Rule.**—Credit unions shall be under the supervision of the Department of Banking. The department is hereby authorized and empowered to issue general rules and regulations and specific orders for the protection of members of credit unions, for insuring the conduct of the business of credit unions on a safe and sound basis and for the effective enforcement of this title . . . .
>
> (b) **Suspension of personnel.**—If, in the opinion of the department, a director, officer or committee member of a credit union has committed a violation of a statute, regulation or cease and desist order which has become final or has engaged in an unsafe or unsound practice involving the credit union or has breached a fiduciary duty and if the department determines that the credit union has suffered or will suffer substantial financial loss or other damage or that the interests of its members could be seriously prejudiced by reason of the violation, practice or breach, the department may suspend the director, officer or committee member upon written notice, pending a hearing to determine whether removal is required.

17 Pa.C.S. § 503(a) and (b).

Cooper argues that the Secretary's authority under 17 Pa.C.S. § 503(b) is limited. Cooper reasons that because subsection (b) refers to a director, officer, or committee member of a credit union, it permits removal of personnel only from those enumerated positions. Cooper characterizes subsection (a) as granting the Secretary the authority to regulate credit unions, as separate and distinct from subsection (b), which Cooper sees as a grant of authority to regulate the individuals who run credit unions. Cooper also urges that 17 Pa.C.S. § 503 be strictly construed under principles of statutory construction applicable to punitive statutes.

■ We find Cooper's arguments without merit. The Secretary correctly concluded that 17 Pa.C.S. § 503(a) gives the Department of Banking broad authority to regulate and supervise credit unions. More specifically it authorizes the Department to issue "specific orders" to protect credit union members, to ensure that credit unions engage in sound business practices, and to effectively enforce the provisions of the Credit Union Code. Subsection (a) alone gives the Secretary the authority to order Cooper's removal from his position on the credit committee and to prohibit him from participation in all other affairs of the Credit Union.

■ Subsection (b) does not in any way limit the Department's authority to regulate and supervise credit unions. Subsection (b) provides a procedure by which the Department may temporarily suspend credit union personnel who pose a risk to the credit union's finances and to the interests of credit union members, rather than having these personnel remain in their positions during the pendency of hearings and appeals. The statute limits the application of this temporary suspension procedure to directors, officers, and committee members. Nothing in subsection (b) limits the Department's authority to prohibit credit union personnel

from participation in credit union affairs when it has been determined that such personnel have committed breaches of fiduciary duty or have otherwise jeopardized the credit union and its members' interests.

■ Finally, we address Cooper's argument that his permanent removal from all credit union affairs violated his due process rights. In his brief on exceptions Cooper raised this issue by a single statement: "Moreover, in light of the lack of statutory authority and notice, to bar him from any employment would be in violation of his due process rights under the federal constitution and the constitution of the Commonwealth." (Brief on Exceptions, p. 2.) The Secretary concluded that Cooper's due process rights had not been violated because Cooper had notice that the Department was seeking his permanent removal from all Credit Union affairs and because he had been given an opportunity to be heard. Given the way the issue was stated, the Secretary made the necessary findings and correctly concluded that Cooper's due process rights had not been violated.

■ Before this Court, Cooper has attempted to rework that due process claim into a challenge of 17 Pa.C.S. § 503 as being unconstitutionally vague as to what conduct is prohibited—i.e., what constitutes an unsafe or unsound practice or a breach of fiduciary duty—and as to the penalties that could result from violations. As quoted in Cooper's brief, a law is void for vagueness

> if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' The void for vagueness doctrine incorporates the due process notions of fair notice or warning. . . . Therefore, in reviewing a void for vagueness challenge, we must consider both the essential fairness of the law and the impracticability of drafting the legislation with greater specificity. Although at first blush a law may appear

vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage[.]

*Fabio v. Civil Service Commission,* 489 Pa. 309, 314–15, 414 A.2d 82, 84–5 (1980) (footnote and citations omitted). A statute is not void for vagueness just because it is difficult to ascertain whether certain acts fall within the coverage of its language; rather a statute is *not* unconstitutional under the *concept of* due process unless the language "fails to convey sufficiently definite warning definite warning as to proscribed conduct when measured against common understanding and practices." *Zangrilli v. Zoning Hearing Board,* 692 A.2d 656, 659–60 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 549 Pa. 710, 700 A.2d 446 (1997) (quoting *Slovak–American Citizens Club v. Pennsylvania Liquor Control Board,* 120 Pa.Cmwlth. 528, 549 A.2d 251, 253 (Pa.Cmwlth.1988)).

In the context of the Credit Union Code, credit union officials have notice that much of their conduct is restricted by statute,[2] by the credit union's by-laws, and by federal regulation. The Credit Union Code, in its entirety, makes it clear that practices that vary from those prescribed by the statute and/or by the credit union's by-laws constitute unsafe and unsound practices and may constitute a breach of fiduciary duty. Such conduct puts the credit union and its members' interests at risk of financial loss and may constitute a violation of federal regulation. Furthermore, custom and usage put credit union directors, officers, and committee members on notice that any practice that jeopardizes the bond eligibility of the credit union or of an individual credit union committee member constitutes an unsound and unsafe practice.

17 Pa.C.S. §503 gives credit union directors, officers, and committee members fair notice that the Department of Banking will act in the interests of credit union members and in the interest of ensuring the operation

---

2. Chapter 5 of the Credit Union Code, 17 Pa.C.S. §§ 501–517, sets forth the powers, duties, and safeguards applicable to credit unions. For example, these provisions address in detail what is permissible in terms of the services a credit union may provide to members; how it may invest its funds; what types of accounts it may offer; what fees it may charge; to whom loans may be given, how loans are to be approved, and how much interest may be charged; how much a credit union may borrow and for what purposes; to name but a few.

of credit unions in accordance with their by-laws and the Credit Union Code. The Department could not effectively ensure the interests of credit union members if it could not permanently remove personnel from all participation in a credit union's affairs.

∎ As applied to Cooper, 17 Pa.C.S. §713(c) clearly mandates that the members of the credit committee "shall pass on all loans, and no loan shall be approved unless it is approved by a majority of the members" unless the committee has delegated its loan approval authority to an appointed a loan officer. Surely the statute is not void for vagueness just because it does not also warn that failure to comply with the prescribed method of loan approval constitutes an unsound practice that may result in the removal of the credit committee members.

Accordingly, we affirm the Secretary's order.

### ORDER

AND NOW, this 19th day of November, 1998, the order of the Secretary of Banking in the above-captioned matter is affirmed.